MANLEY *v.* COLEMAN ET AL.

*Negligence—Malpractice—Joint liability of surgeon and attend-
ing physician—Failure to remove sponge after operation
—Charge to jury—Charge that surgeon not liable if
patient's condition prevented examination, erroneous—
Charge limiting determination of issues to plaintiff's tes-
timony, erroneous—Evidence—Hypothetical questions to
contain, what.*

1. In an action for damages, resulting from a surgical opera-
tion in which the operators are charged with negligently
leaving a gauze sponge in the abdominal cavity of a patient
for a period of forty days, the liability is joint as be-
tween the surgeon who handled the knife and the fam-
ily physician who advised the operation, recommended
the surgeon, was present when the operation was per-
formed, and participated in all that was done with the
exception of handling the knife; and an instruction to the
jury to the effect that if they found the physician did not

[1] Physicians and Surgeons, 30 Cyc. pp. 1581 (Anno.),
1590; [2] Id., 30 Cyc. p. 1588; Trial, 38 Cyc. p. 1632; [3]
Id., 30 Cyc. p. 1588; Id., 38 Cyc. p. 1627; [4] Id., 30 Cyc.
p. 1588; [5] Evidence, 22 C. J. §§ 796, 800.

perform any major part of the surgery he would not be liable in damages was erroneous in that in legal force and effect it was an instruction to discharge the physician from all liability in the premises.

2. So also an instruction, which in effect told the jury that if they found the sponge was necessary in the first instance the defendant surgeon would not be liable in damages if he was prevented from making a thorough search for and from removing the sponge by reason of the condition of the patient, was erroneous and highly prejudicial, in that it took from the jury the real question of negligence charged in the petition.

3. A charge which limited the jury to the testimony of the plaintiff herself, in their determination of the issue as to whether a sponge was left in the body of the plaintiff, was clearly erroneous and prejudicial, where testimony had been given by others supporting her claim that a sponge had been left in her body.

4. In such a case the plaintiff is entitled to have an instruction given to the jury which will submit the real question in issue, to-wit: Were the defendants negligent in failing to remove the sponge at the time of the operation, or thereafter, if one was left in her body?

5. A hypothetical question must fully and fairly reflect the facts, and the omission of facts which are in evidence renders such a question improper where what is included manifestly fails to present the facts in their true relation.

(Decided February 25, 1924.)

ERROR: Court of Appeals for Tuscarawas county.

*Mr. Lee J. Myers* and *Mr. J. F. Kuhns,* for plaintiff in error.

*Messrs. Wilkin, Fernsell & Fisher* and *Messrs. Bowers & Bowers,* for defendants in error.

HOUCK, J. As the parties stand here in the same position as in the common pleas court they will be

referred to in this opinion as plaintiff and defendants.

This is a malpractice case, and the plaintiff, Delphia Manley, in her amended petition filed in the common pleas court, in substance, says: That on or about the 30th day of July, 1920, the defendant Harrison A. Coleman, assisted by the defendant Samuel B. McGuire, performed an abdominal operation upon plaintiff, at the Union Hospital, Dover, Ohio; that in the performance of the operation the defendants used gauze sponges and carelessly and negligently permitted one of said sponges to remain in plaintiff's abdomen for a period of approximately forty days, at which time said sponge passed from plaintiff; that while said sponge remained in plaintiff's abdomen her bowels were completely obstructed, she suffered great pain and anguish, and her health was seriously and permanently impaired, for which she prays damages in the sum of $50,000.

The defendant McGuire filed a separate answer, alleging that the defendant Coleman performed the operation, assisted by a Doctor Goodrich. He admitted the use of cloth sponges, but denied all other allegations of the petition.

The defendant Coleman filed a separate answer, admitting that he, "assisted" by the defendant Samuel B. McGuire, and by Doctor Glen L. Goodrich, performed an operation upon the plaintiff, at the Union Hospital, Dover, Ohio. He denied the other allegations of the amended petition.

Upon the issues raised by these pleadings the cause was submitted to a jury, and a verdict was returned for the defendants. The trial judge, in

due time, overruled the motion of plaintiff for a
new trial, and from this, and the judgment on the
verdict, error is prosecuted to this court, in which
it is sought to reverse the judgment of the lower
court.

The first error complained of is in giving to
the jury, before argument, special written request
No. 4, on behalf of the defendant McGuire, which
reads:

"If you find from the evidence that the defend-
ant, Harrison A. Coleman was engaged to perform
said operation, with the knowledge and consent of
the plaintiff, and if you find that he undertook to
perform said operation and made an incision in
the plaintiff's abdomen, cleansed the peritoneum
with strips of cloth or gauze, removed the foetus,
sewed up the wound, and performed such other
acts as were necessary and incidental to said surg-
ical operation; and if you find from the evidence
that the defendant, Samuel B. McGuire, rendered
him only such assistance as holding open the inci-
sion, holding and handing to him clamps and in-
struments, holding cords, but did not, in fact, per-
form any major part of the surgery; then I in-
struct you that the defendant Samuel B. McGuire
is not liable for any damages herein, and you
should render your verdict accordingly."

It must be kept in mind that special written re-
quests before argument, if given, must be respon-
sive to the issues raised by the pleadings and the
proven facts. It is conceded in this case that Doc-
tor McGuire was the family physician of the plaint-
iff; that he had treated her for some time for the
trouble which resulted in the operation in question;

that he advised the operation; that he recommended that Doctor Coleman be employed to perform it; and that he was present and assisted in the performance of the operation.

Doctor G. I. Goodrich testified (Record, page 107):

"Q. Doctor, you administered the anaesthetic? A. Yes, sir.

"Q. Were you at the hospital on July 30, 1920, when Mrs. Manley underwent an operation? A. I was.

"Q. You may state, Doctor, just what was done there and who did it? A. Mrs. Manley had an operation for ectopic pregnancy and Doctor Coleman performed the operation and I gave the anaesthetic and Doctor McGuire assisted Doctor Coleman."

Doctor Coleman testified (Record, pages 153-156):

"Q. Who removed the sponges? A. Both of us.

"Q. When you say both of us, who do you mean? A. Doctor McGuire and myself.

"Q. Doctor Coleman, you say you were assisted by Doctor McGuire in this operation? A. Yes, sir.

"Q. What assistance, if any, did Doctor McGuire render? A. Obeying my directions as I gave them, and assisted me in the use of hands in handling instruments.

"Q. Did Doctor McGuire use any of the instruments on the patient? A. Yes, sir.

"Q. What instruments were they? A. I can not tell any from general memory and not from

specific memory in this case. He used hemostats, restractors and scissors.

"Q. Were they handled under your specific directions? A. Their specific use I employed."

Doctor McGuire testified (Record, page 175):

"Q. Now, Doctor, did you hold any of the instruments and assist in removing sponges during this operation? A. Yes, sir.

"Q. Then you did assist Doctor Coleman in this operation, did you not? A. Yes, sir.

"Q. Now, Doctor, I will ask you whether or not you were discharged by Mrs. Manley as a physician and surgeon in this case at any time between the operation and the 10th of September? A. No, sir."

It certainly is made clear from this testimony that both Doctors Coleman and McGuire were actually participating in the performance of all things pertaining to the operation. Their own admissions disclose it, and the physical facts establish it beyond question. While the actual incision or cutting was done while the knife was in the hand of Doctor Coleman, yet all other acts and things to be done in and about the operation were jointly done by Doctors Coleman and McGuire. We are bound to and do reach this conclusion from their testimony. Under the facts disclosed in this case we find no place at which to fix the point where the liability, if any, of Doctor Coleman ends, and that of Doctor McGuire begins, and *vice versa*.

If liable at all, the liability is a joint one. Therefore, the instruction that if the jury found that Doctor McGuire did not, in fact, perform any major part of the surgery, he would not be liable,

is and was erroneous, and prejudicial to the rights of plaintiff—the legal force and effect of this instruction being to discharge the defendant Samuel B. McGuire, from all liability in the premises.

Learned counsel for the defendant McGuire insist that under the facts Doctor Coleman was employed to perform the operation upon the plaintiff, and that the relationship which existed between Doctors Coleman and McGuire was that of principal and agent, McGuire being the agent of Coleman.

To this claim we do not agree. We are fully convinced that under the facts and the allegations of the petition the liability of the defendants, if liable in damages to plaintiff, must be based upon joint liability, they being engaged in a common purpose, thus making them joint tort-feasors.

We are convinced that the rule of law laid down in *Gorey v. Black,* 100 Ohio St., 73, is decisive of the question here raised, against the defendants and in favor of the plaintiff.

The court says, at page 77:

"It must be noted that the petition in this case states a joint cause of action against Clark and Black, the defendants. The allegations of negligence are directed against each of the defendants. The petition does not state a case of master and servant, and the plaintiff's right of recovery does not depend on the doctrine *respondeat superior.* His claim rests on the ground of the joint and mutual negligence of both of the defendants in the wrongful operation of the automobile. But even if the relation of master and servant was averred that would not prevent the joinder under the aver

ments of this petition. Where the master partici-
pates in the negligent act there is no room for
question as to his joint liability with the servant
to the injured person. (5 Thompson on Negli-
gence [2 ed.], Section 5776.)''

The second ground of error is based upon spe-
cial requests Nos. 1 and 2, given before argument,
at the request of counsel for the defendant Cole-
man, which read:

1. ''The court instructs the jury as a matter of
law that even though you believe from the evi-
dence that at some time during the defendant's
treatment of plaintiff a piece of gauze was left
within the abdominal cavity of her body, yet you
cannot draw the conclusion of negligence on the
part of the defendant from that fact alone; but
before you can find the defendant guilty of negli-
gence in that respect you must find from the pre-
ponderance of the evidence that he did not exercise
ordinary and reasonable care and skill in his treat-
ment of plaintiff, and by reason of such negligence
the said gauze was left in the wound.''

2. ''You are instructed that the defendant Cole-
man was not at any time required to exercise the
highest degree of care or diligence in the perform-
ance of the operation in question, but the law im-
poses upon him the duty of using reasonable care,
and though you may believe from the evidence in
this case that the defendant Coleman, in the per-
formance of the operation left the sponge in the
abdominal cavity, still if you believe from the
evidence that the defendant, in the performance
of the operation, exercised ordinary care, and was
prevented from making a thorough search for, and

removing the sponge so left, by the serious condition of the patient under the anaesthetic, then your verdict must be for the defendant.''

A careful reading of the above instructions can lead one but to the conclusion that the legal effect of same was to tell the jury that if they found the gauze or sponge was necessary in the first instance the defendant Coleman would not be liable to plaintiff in damages; or, that if he was prevented from making a thorough search for the gauze, or from removing same from her body, by reason of the serious condition of plaintiff, then the verdict must be in his favor. This instruction took from the jury the real question of negligence charged in the petition, viz., ''that the defendants, without the knowledge or consent of plaintiff, did carelessly and negligently, and in violation of the obligations of their contract of employment, leave said cheese cloth sponge in plaintiff's abdomen, and did carelessly and negligently, and without the knowledge or consent of plaintiff, close said opening made in said operation, without removing said cheese cloth sponge * * *; that from the 11th day of August, 1920, to the 10th day of September, 1920, defendant McGuire treated plaintiff, and carelessly and negligently, etc., permitted said cheese cloth to remain in plaintiff's abdomen.''

The real mischief charged, and the negligence complained of, was the leaving of the sponge in the abdomen of plaintiff after the operation. There is some evidence tending to show that defendants knew that one sponge was not accounted for; and there is no proof that any attempt was made by the defendants, or either of them, to locate same

after the closing of the wound, at the time of the operation. There is evidence in the record to the effect that under these facts good surgery would require that the wound be reopened and an exploration made for the missing sponge.

Under these facts and the issues to be determined by them we are fully convinced that such instructions were highly prejudicial to the rights of the plaintiff, and constitute reversible error.

The third claimed error is: Did the trial judge commit prejudicial error in refusing to give to the jury before argument plaintiff's special request No. 2, which was in writing, and reads as follows:

"The court instructs the jury that if in the performance of an operation it becomes necessary to use gauze sponges, it is the duty of the surgeon or surgeons performing said operation to remove said sponges at the end of the operation, and if you find from a preponderance of the evidence in this case that the defendants failed to remove a gauze sponge, which was used in the performance of an operation upon this plaintiff, such failure would be negligence, and if the plaintiff suffered any damage as the proximate result of said negligence, then your verdict must be for the plaintiff."

This court is of the opinion that under the pleadings, the issues raised thereby, and the undisputed and proven facts, this instruction should have been given to the jury. The instruction goes to the real question involved in this case, viz: Were the defendants negligent in failing to remove the gauze sponge in question, at the time of the operation or thereafter, if one was left by them in the body of the plaintiff?

We think we need but cite the case of *Palmer* v. *Humiston*, 87 Ohio St., 401, at pages 406 to 408, in support of our ruling here made.

The court there says:

"Obviously, if he was to perform the operation, and 'in the performance of that operation it was necessary that certain gauze or cheese-cloth sponges be used,' the use of the sponge becomes a part of the operation as much as the use of knife or needle would become a part of this operation, and if the use of the sponge be a part of the operation, it must follow as a corollary that the removal of the sponge at the end of its use becomes also a part of that operation.  *  *  *

"The defendant, therefore, having admitted the contract to perform the operation and the use of the sponges as necessary thereto, has assumed the full measure of professional responsibility, which is the average care and skill of the profession at the time and in the place of the operation, which must include everything connected with the operation, the use of foreign substances and also the removal of those foreign substances when the operation is finished."

The fourth ground urged by plaintiff for a reversal of the judgment below is that the common pleas court erred in its general charge to the jury, as appears at page 194 of the record.

The court said to the jury:

"The first proposition for you to determine is whether or not there was any sponge left in plaintiff's abdomen at the time the operation was performed. And in determining that fact you will consider all the evidence that bears upon it. The

only direct evidence bearing upon it comes from the plaintiff herself.''

This charge is erroneous and prejudicial to plaintiff's rights, as it was an instruction that conveyed to the jury, in no uncertain terms, that the question as to whether or not a sponge was left in plaintiff's abdomen at the time of the operation stood alone upon her testimony, which statement is not borne out by the record, as it discloses that others testifying upon this subject supported her recital as to the sponge being in her body. Hence, as we view it, this charge was misleading and prejudicially erroneous.

The fifth error urged as a ground for reversal of the judgment below is that the hypothetical question propounded to Dr. G. I. Goodrich, pages 109 and 110 of the record, was not a statement of the facts as established by the evidence.

We shall not discuss this at length, but deem it only necessary to say that as to constituting prejudicial error we feel that it is near the borderline. If it were the only error complained of, and it stood alone as the only ground for reversal, we might not, in the light of the entire record, enter a reversal. However, if not prejudicial, it is certainly misleading, for the reason that some of the material and essential proven facts are not stated in the question.

A hypothetical question must fully and fairly reflect the facts. And the omission from the question of facts in evidence renders it improper, where, by reason of such omission, it manifestly fails to present the facts which it does not include in their just and true relation.

Sixth. Is the judgment against the manifest weight of the evidence?

In view of the findings made heretofore by this court in this case, we do not deem it necessary to enter into a discussion of or to pass upon the claimed error that the judgment was and is against the manifest weight of the evidence.

This case was ably presented by learned counsel, both orally and in written brief. The bill of exceptions contains about two hundred pages of testimony, and the members of this court have analyzed it, examined the authorities cited in the briefs, and given to each and all of the alleged errors set forth in the petition in error that careful consideration so necessary for their determination.

In our consideration of the record before us for review we constantly had in mind the importance of the questions raised, and did not content ourselves alone with the authorities cited by learned counsel, but examined many others as the result of personal research.

We are of the unanimous opinion that there is prejudicial error in the record in the particulars herein pointed out, and for that reason this court has but one course to pursue, namely, to reverse the judgment of the common pleas court and to remand the cause to that court for a new trial.

*Judgment reversed, and cause remanded.*

PATTERSON and SHIELDS, JJ., concur.