China FREYER, Plaintiff–Appellant and Cross–Appellee,

v.

Richard E. ALBIN, M.D., Defendant–Appellee and Cross–Appellant.

No. 97CA1707.

Colorado Court of Appeals, Div. IV.

Sept. 30, 1999.

Certiorari Denied Aug. 7, 2000.*

James W. Avery & Associates, P.C., James W. Avery, Parker, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Pryor Johnson Montoya Carney and Karr, P.C., Elizabeth C. Moran, Englewood, Colorado; Kaluk, Burg and Tiemeier, LPP, C. Gregory Tiemeier, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge KAPELKE.

In this medical malpractice action, plaintiff, China Freyer, appeals from the trial court judgment entered against her and in favor of defendant, Richard E. Albin, M.D. We affirm.

When she was 18 months old, in 1980, plaintiff underwent certain surgical procedures to correct sagittal craniosynostosis, a condition that results in an abnormal head shape. Defendant, who is a plastic surgeon, was involved in plaintiff's treatment at the time, as was another physician, a neurosurgeon.

In 1995, plaintiff, through her parents and guardians, brought this suit claiming that defendant and the neurosurgeon, as well as a hospital, acted negligently in the treatment and care of plaintiff and negligently failed to obtain the informed consent of plaintiff's parents to the surgery.

After plaintiff settled with and dismissed her claims against the neurosurgeon and the hospital, she continued to pursue her negligence claims against defendant and also sought to recover against him on a vicarious liability theory based on the alleged negligence of the neurosurgeon.

While the trial court permitted plaintiff to present evidence at trial to establish her vicarious liability claim, at the close of plaintiff's evidence the court granted defendant's motion for directed verdict on that claim. The court found that plaintiff had not established that defendant and the neurosurgeon had any type of relationship (such as agency, employment, partnership, or joint venture) that would support a claim of vicarious liability.

At the conclusion of the trial, the jury returned a verdict in defendant's favor on the negligence claims. By its special verdict, the jury determined that plaintiff had been injured but that defendant had not been negligent and had not caused plaintiff's injuries. This appeal followed.

## I.

At the outset, we address and reject defendant's assertion that this appeal must be dismissed as untimely. Defendant previously sought dismissal of this appeal by motion. However, a division of this court denied that motion, granted plaintiff's motion for an extension of time, denied defendant's motion for reconsideration of that ruling, and granted defendant leave to address the issue in the briefs.

■ This court has broad discretion in determining whether excusable neglect has been shown to justify an extension of the time for filing a notice of appeal. *See Weason v. Colorado Court of Appeals*, 731 P.2d 736 (Colo.1987). We find no basis for disturbing the previous discretionary determination by another division finding that plaintiff made such a showing. We therefore conclude that this court has jurisdiction and address the merits of the appeal.

## II.

Plaintiff contends that the trial court erred in dismissing her claim against defendant based on a theory of vicarious liability. We disagree.

In advancing her vicarious liability argument, plaintiff relies on *Bolles v. Kinton*, 83 Colo. 147, 263 P. 26 (1928) and *Scruggs v. Otteman*, 640 P.2d 259 (Colo.App.1981), as well as *CJI–Civ.3d* 15:10 (1989).

In *Scruggs v. Otteman, supra*, a division of this court discussed the basis upon and circumstances under which a physician may be held liable for the negligence of another physician. The division noted that when several physicians act independently in the course of treating a single person they generally are not jointly liable for the acts of one another. However, citing *Bolles v. Kinton, supra*, the division went on to state that when several physicians act in concert or are jointly employed, each might be held responsible for the negligent conduct of any or all of the others. As the opinion in *Scruggs* points out, such liability has been premised upon either joint tortfeasor principles or on principles of partnership law.

Both *Scruggs* and *Bolles* preceded enactment of § 13–21–111.5, C.R.S.1999, which was intended to abolish the harsh effects of joint and several tort liability and substitute a rule that each wrongdoer is liable only for the portion of a plaintiff's injuries that is represented by the wrongdoer's own percentage of fault. *See Miller v. Byrne*, 916 P.2d 566 (Colo.App.1995).

Under § 13–21–111.5(4), C.R.S.1999, however, joint liability may still be imposed where two or more persons "consciously conspire and deliberately pursue a common plan or design to commit a tortious act."

*CJI–Civ.3d* 15:10, which addressed "liability of physicians acting jointly," provided as follows:

When two or more physicians expressly or impliedly agree to work with each other to treat or care for a patient's injury or condition, each physician is legally responsible to the patient for any negligence of any of the other physicians arising out of and within the scope of their agreement to treat or care for that injury or condition.

Significantly, that jury instruction has been deleted in *CJI–Civ. 4th* (1998). The Notes for Use discussion in the 1998 volume explains that the former instruction "may no longer be an accurate statement of the law" in light of the enactment of § 13–21–111.5

■ We conclude that the adoption of § 13–21–111.5, which eliminated joint and several liability for joint tortfeasors, did, indeed, have the effect of eliminating liability of a physician for the negligent acts of another physician absent a showing that the physicians "acted in concert," as provided in § 13–21–111.5(4), or that the physicians were in an employment, partnership, or joint venture relationship with one another.

Here, the trial court did allow the jury to consider whether defendant was liable for

conspiring or "acting in concert" with the neurosurgeon in the pursuit of a common plan. In finding in defendant's favor, however, the jury apparently found that plaintiff had not made such a showing.

As discussed, the trial court determined that plaintiff had not demonstrated the existence of any partnership or joint venture relationship between defendant and the neurosurgeon. Our review of the evidence confirms that conclusion.

Plaintiff has never claimed there was a partnership relationship. To the extent that she asserts the existence of a joint venture relationship, however, we note the following applicable principles.

■ Plaintiff had the burden of establishing the existence of a joint venture relationship. *Fulenwider v. Writer Corp.*, 544 P.2d 408 (Colo.App.1975) (not selected for official publication).

■ As stated in *City of Englewood v. Commercial Union Assurance Cos.*, 940 P.2d 948, 957 (Colo.App.1996):

A joint venture exists when there is: 1) a joint interest in property; 2) an express or implied agreement to share in profits or losses of the venture; and 3) actions and conduct showing joint cooperation in the venture.

■ Here, plaintiff made no showing that defendant and the neurosurgeon had a relationship having the hallmarks of a joint venture. The record reveals that they practiced medicine separately, billed their patients separately, did not share profits or losses, and did not combine their property, money, or effects in furtherance of a venture. *See Werkmeister v. Robinson Dairy, Inc.*, 669 P.2d 1042 (Colo.App.1983). Accordingly, we find no basis for rejecting the trial court's findings and conclusion in this regard.

Finally, plaintiff's argument that defendant can be found liable on a theory of "joint enterprise" was not alleged or addressed in the trial court and was first raised in briefs filed in this appeal. We therefore will not address it here. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo. 1986).

Accordingly, the trial court did not err in granting a directed verdict in defendant's favor on plaintiff's claim that defendant was vicariously liable for alleged negligence by the neurosurgeon.

The judgment is affirmed.

Judge RULAND and Judge VOGT concur.